Nott, J.,
delivered the opinion of tbe court:
These cases now come to a final hearing upon the report of the special commissioner, the evidence upon which that report is founded, and the exceptions to the report which have been filed on the part of the defendants. From an examination of the evidence we are satisfied that the report should he confirmed and j udgment entered thereupon for the claimants. The facts stated in the report we adopt as the finding of the court. Certain other facts, requested by the parties respectively, we also find, so far as they are established by the evidence or deemed relevant to the case, and direct that they be returned to the Supreme Court if an appeal be taken. As to facts prayed for, but not allowed, they also will be certified up with the reasons of the court for its refusal. The question suggested as to the power of the court thus to regulate its practice, we do not think need be again examined. See Crowell's Case, (5 C. Cls. R., p. 23;) Lawrence's Case, (Id., p. 79.)
A question, however, has been raised by the Assistant Attorney-General as to the validity of the assignment of quartermaster vouchers by the nominal claimants to the persons for whose use the suits are brought; and it is insisted that the assignments were void under the provisions of the Act 26th February, 1853, (10 Stat. L., 170.) It is proper to add that this position is supported by former decisions of this court, and that we.have been led to review our conclusions and inquire anew as to their accuracy.
The question involved was never free from doubt, and this court was always divided upon it. The act is decisive in its terms: “That all transfers and assignments hereafter made of any claim upon the United States, or any share or part thereof or interest therein, whether absolute or conditional,” “ and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or any part or share thereof, shall be absolutely null and void, unless the same shall be freely made and executed in the presence of at least two attesting witnesses after the alloioance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof! But this act was declared by its title to be ‘ ‘An ad to prevent frauds upon the Treasury of the United StatesP Moreover, the provisions of the statutes es *255 tablishing this court seem iuconsisteut with the restrictions of the former act, and the language of the Amended Court of Claims Act, (12. Stat. L., p. 763, § 12,) where it speaks of utJie original and every prior owner thereof where the claim has been assignedf utterly irreconcilable with an enactment that declared all such assignments void.
Nevertheless, in the Floyd Acceptance Cases (1 C. Cls. R., p. 270) it was held that the Act 26th February, 1853, was not affected by the later statute, and rendered void an assignment (made by means of bills of exchange) of moneys due or to become due to a coutractor. In the case of Coté (3 C. Cls. R., p. 64) this doctrine was carried further, and applied to all claims arising under the Abandoned or captured property Act.
The point determined by this court iu the former of these cases was not directly passed upon by the Supreme Oourt when the case was reviewed on the appeal, but the manner in which the appeal was disposed of indicates that it must have been considered. The Supreme Oourt was divided, and three of the judges held that as the drafts known as the Floyd acceptances were drawn on a particular fund and subject to a certain contingency, they were not bills of exchange in the sense of negotiable paper, but worked an assignment of whatever funds might be in the hands of the Government belonging to the drawers. In this court the answer to that proposition had been that the Act 26th February, 1853, forbade all such assignments. In the Supreme Oourt this answer would have been equally conclusive if the same construction was entertained of the statute, but instead of so answering it, the majority of the court passed by the statute, and said: “ It does not appear from this record that anything remains due to Russell & Co. under their contract with the Government, or that anything was due them at the matxmty of any of these drafts, nor is there any attempt on the part of plaintiffs to show either of these things, or the state of the accounts between those contractors and the Government at the time the drafts matured,” (7 C. Cls. R., p. 75.) It is inferable, therefore, and especially when the ground taken by the minority of the court is borne in mind, that if the record had disclosed anything due to the drawers, or if the holders had attempted to show a balance remaining, and been precluded by the ruling of the court below, then .there would have been ground for re *256 manding tbe case and ordering a new trial as the three judgés-insisted should be done.
But subsequently Congress passed the Act 25th June, 1868, (15 Stat. L., p. 75, § 4,) which declares, among other things, that no person from whom a claimant derives his claim against the United States shall be a competent witness in the Court of Claims. Of this statute the Supreme Court said: “ The claimant cannot testify, nor can the person toho after a claim has accrued to him against the United States has sold or transferred it to the claimant? — Anderson's Case, (7 C. Cls. R., p. 121.) Now, as the only assignments permitted by the Act 26th February, 1853,. are of claims which have passed beyond dispute, and which could not be the subject of litigation in this court, it is evident that the Act 25th June, 1868, was construed to apply to the assignees of claims which might be the subject of litigation. And this inference is rendered almost certainty by the fact that the decision was renderedin one of the Abandoned and Captured Property Gases ; for in those cases the claim cannot be adjusted by the Treasury, and must be litigated here, and could never be put in that form which, according to the requirements of the act of 1853, is essential to make it the subject of sale or transfer.
In view of these decisions of the Supreme Court, and of this subsequent legislation of Congress, we have deemed it our duty to review our former decisions, and after careful reflection are all agreed that they were erroneous. And we think that the true construction to be given to the Act 26th February, 1853, was correctly stated by our brother Loring in his dissenting opinion in the case of Coté, (3 C. Cls. R., p. 64.)
The nest question is whether the claim of the contractor was assigned by the sale and transfer of the vouchers. We think this is in effect answered by the Supreme Court in the Floyd Acceptance Cases. If a draft drawn by a contractor upon moneys to become du$ to him can work to the holder an equitable assignment of a claim, or a portion of a claim, much more should the same effect be given to these voucher's which are the lawful, usual, and proper means to the end of liquidating and discharging the debts of the Government. They certainly are not in any sense negotiable paper where the holder, purchasing before maturity, gets a better title than his vendor may have had, and the purchaser will certainly take them subject to all *257 tbe equities which may exist against the contractor to whom they were issued; but they are, nevertheless, evidences of indebtedness sufficient in themselves to support, prima facie, an action, (Parish Case, 2 C. Cls. R., p. 341,) and while it would be dangerous to attach to them the quality of negotiable paper, it is most desirable for the interests of the Government that they be deemed by the courts transferable, as they always have been by the Departments, so as to enable contractors to avail themselves of ordinary commercial facilities.
The only doubt that arises is as to the right of numerous assignees to bring at the same time numerous suits upon vouchers issued under a single contract. The rule which forbids the splitting of demands is not altogether an original legal right of a defendant, but an equitable interposition of courts to prevent a multiplicity of suits upon principles of public policy, and it is confined to cases where the demands are united in one person. If the Government by its proper officers issues these vouchers, say for instalments becoming due at different times upon a contract, and is guilty of default in not paying them, so that all are issued before any is paid, some inconvenience may arise from a multiplicity of suits brought by different holders$ but no substantial wrong can be done, as against each can be set up the same defense that could have been against the assignor. It is better that this inconvenience should occasionally arise than that every party to whom vouchers are issued should be prohibited from using them in the manner which modern mercantile usage has made a necessity in trade.
The last question is whether these suits must necessarily be brought in the name of the assignor. At common law a chose in action was supposed to be incapable of assignment. But the device of allowing a suit to be prosecuted by the assignee, in the name of the assignor, has reduced the disability to one of form rather than of substance. In Burns’ Case, (7 C. Cls. R., p. 19,) the Supreme Court held that “the Court of Claims, in deciding upon the rights of claimants, is not bound, by any special rules of pleading in Baird’s Case, (ante, p. 13,) that there should be no strict application u of the rules of pleading to this class of cases.” But in these cases now before us the claimants have sued in the name of their assignor, and the point is not necessarily involved. Regarding it as not free from doubt, we leave it undetermined.*
*258 The judgment of the court is, that the claimant, W. H. H. Lawrence, recover:
For the use of John L. Pendery, assignee of Emanuel H. Gruber and Mortimer D. Whitridge, copart-ners, trading as E. H. Gruber & Co., the sum of.. $6,565 91
For the use of Eobert Morrow, the sum of. 4, 588 97
For the use of Thomas A. Osborne, the sum of. 1,493 33
For the use of Leonard T. Smith, the sum of. 2,928 42
Amounting, in the aggregate, to the sum of.... 15,576 63
Th.at the claimant, William Crowell, recover:
For the use of 'John L. Pendery, assignee of Emanuel H. Gruber and Mortimer D. Whitridge, composing the firm of E. H. Gruber & Co., the sum of. 11, 972 40
For the use of Thomas A. Osborne, the sum of- 2,231 51
For the use of A. A. Higinbotham, the sum of.' 1,545 35
Amounting, in the aggregate, to the sum of ... 15, 749 26
That the claimant, Thomas E. Milhoan, recover:
For the use of John L. Pendery, assignee of Emanuel H. Gruber and Mortimer D. Whitridge, composing the firm of E. H. Gruber & Co., the sum of.!..... 122 50
And to his own use. 4, 996 09
Amounting, in the aggregate, to the sum of... 5,118 59
That the claimant, William U. Carson, recover:
In his own behalf, the sum of. 5,504
That the claimant, Edward S. Eldridge, recover:
For the use of Eobert Morrow, the sum of. 590 76
For the use of Sidney Clarke, the sum of.. 1, 589 50
For the use of Leonard T. Smith, the sum of .,,. 867 00
Amounting, in the aggregate, to the sum of.... 3, 047 26

But see Cavender’s Case, post, p. 281.